ID

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE

SHONTELL FONDREN,

     Plaintiff,

v.

ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,

     Defendant.

**FILED**
NOV 8 - 2016
CIRCUIT COURT CLERK
BY _____ D.C.

Civil Action No. CT-004541-16
Div. III

**JURY DEMANDED**

---

### COMPLAINT

---

COMES NOW the Plaintiff, SHONTELL FONDREN, by and through counsel, and submit the following for her Complaint against ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY:

### PARTIES AND JURISDICTION

1.    Shontell Fondren (hereafter "Plaintiff") is a citizen of Cordova, Shelby County, Tennessee. At all times relevant hereto, Plaintiff was the owner of the realty and dwelling located at 8466 E Askersund Cove, Cordova, Shelby County, Tennessee (the "Insured Premises").

2.    Defendant, Allstate Property and Casualty Insurance Company (hereafter "Defendant"), which is organized in the State of Illinois and has its headquarters in the State of Illinois, is engaged in the insurance business in the State of Tennessee, including Shelby County.

3.    This Complaint originates as the result of a sudden and accidental rupture in a water supply line that severely damaged the dwelling located on the Insured Premises, and Defendant's unlawful failure and refusal to promptly and fully pay Plaintiff's insurance claim.

## FACTS

4.      At all times relevant hereto, Plaintiff was the insured pursuant to an insurance contract whereby Defendant agreed to insure the dwelling, other structures, and personal property located at the Insured Premises against property damage, bearing Policy No. 955 242 440 (the "Policy"). The Policy's term was March 13, 2016 to March 13, 2017. The Policy is incorporated herein by reference as if set forth verbatim.

5.      At all times relevant hereto, the Insured Premises consisted of a residential dwelling and surrounding area in which Plaintiff and her family reside.

6.      The Policy provided insurance coverage for accidental direct physical loss to the dwelling located on the Insured Premises, as well as coverage for debris removal, additional living expenses, and such other insurance coverage as specifically set forth in the Policy.

7.      The Declarations page of the Policy reveals that coverage was provided in the following amounts:

      a.  Dwelling                          $202,041

      b.  Other Structures           $20,204

      c.  Personal Property          $121,225

      d.  Additional Living Expenses  $20,204

8.      The Policy is an "all-risks" policy, meaning that the Policy covered all risks of accidental direct physical loss except for those specifically excluded by the Policy.

9.      Pursuant to the Policy, Plaintiff paid an annual premium to Defendant in exchange for insurance coverage.  Plaintiff paid the required premiums at all times relevant to this Complaint.

10.     On or about April 22, 2016, a plumbing supply line in the concrete slab of the dwelling suddenly and unexpectedly ruptured, causing substantial damage to the dwelling located on the Insured Premises (the "Loss").

11.     The Policy was in effect at the time of the Loss, and the Loss is compensable under the terms of the Policy.  As it relates to the Loss, there is no applicable exclusion.

12.     Plaintiff promptly reported the Loss to Defendant on the same day that the Loss was discovered, April 22, 2016.  Plaintiff discovered the loss when they noticed water bubbling up in the garage floor slab and warping of the interior floors.

13.     On May 3, 2016, Defendant's adjuster, David Echols, responded to the claim and inspected the Insured Premises.  Because the ruptured water supply line that caused the Loss was in the slab foundation of the dwelling, Mr. Echols was unable to inspect the break in the water line, but he did verify significant damage to the dwelling located on the Insured Premises, including the buckling floors, water damage to cabinets, etc.  Mr. Echols advised that it might be a "structural issue" and that an engineer would be needed.

14.     No other agent or representative of Defendant has inspected the Insured Premises since Mr. Echols' May 3, 2016 inspection.

15.     On the same day as Mr. Echols' inspection, May 3, 2016, he sent Plaintiff a letter denying her insurance claim.  Specifically, the denial letter stated:

> As part of your claim that resulted from the plumbing problem in your home, Allstate Insurance Company is unable to provide coverage for your plumbing repair because of the following provisions in your Allstate Allstate [sic] House and Home policy.
>
> Losses We Do Not Cover Under Coverages A and B and C:
> We do not cover loss to the property described in Coverage A Dwelling Protection or Coverage B Other Structures Protection consisting of or caused by:

7.      a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
        b) mechanical breakdown;

If any of (a) through (h) cause the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system within your dwelling, we cover the direct physical damage caused by the water or steam. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of your dwelling necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water escaped.

16.     At the time of denial of Plaintiff's claim, Defendant had no knowledge of the cause of the rupture in the water line and had performed no investigation as to the cause. The rupture was not caused by wear and tear, aging, marring, scratching, deterioration, inherent vice, latent effect, or mechanical breakdown. Even if it were, the direct physical damage caused to the dwelling by the escaping water is covered by the plain terms of the Policy, as is the cost of tearing out and replacing the parts of the dwelling necessary to repair the ruptured water line.

17.     On May 24, 2016, after Plaintiff complained to Defendant that the denial was inappropriate, Defendant issued a second letter confirming that the claim would be denied.

18.     Plaintiff fulfilled all of the duties after the Loss that were imposed upon her by the Policy.

19.     Despite the fact that Plaintiff fulfilled all duties imposed upon her by the Policy and is at no fault in this matter, Defendant wrongfully denied and/or refused to fully and promptly pay Plaintiff's claim for insurance proceeds.

20.     By letter dated June 7, 2016, Plaintiff requested that her claim be reopened and requested a certified copy of her insurance policy. Defendant failed to respond to the June 7, 2016 letter.

21.    On July 26, 2016, Plaintiff followed up again to request a response to her June 7, 2016 letter. Defendant again failed to respond.

22.    On September 20, 2016, Plaintiff again followed up with Defendant to request a response to her 3 month old request that the claim be reopened and that she be provided with a copy of her insurance policy. Defendant failed to respond.

23.    To date, Defendant has refused to respond to any of Plaintiff's inquiries since its denial of her claim.

24.    Defendant' refusal to pay the money and benefits due and owing the Plaintiff under the Policy has caused the Plaintiff to seek legal counsel and to initiate this Complaint to recover the insurance proceeds and/or other Policy benefits to which she is entitled.

## CAUSES OF ACTION

### Breach of Contract

25.    The allegations contained in the paragraphs above and below in this Complaint are incorporated herein by reference as if set forth verbatim.

26.    The Policy issued by Defendant was a binding contract, and is supported by valid consideration.

27.    Defendant is in total material breach of the Policy and is liable to the Plaintiff in the maximum amount allowed by the Policy for the Loss. Specifically, Defendant's breach of contract includes the following without limitation: (a) failure and refusal to pay the amounts owed to Plaintiff for the damage to the dwelling under the "Dwelling" coverage afforded by the Policy; (b) failure and refusal to pay all amounts owed to Plaintiff for the damage to their personal property under the "Personal Property" coverage afforded by the Policy; (c) failure and refusal to pay all

5

amounts owed to Plaintiff for her additional living expenses; and (d) failure and refusal to pay such other amounts to Plaintiff as may be required by the Policy.

28.    As a result of Defendant's breach of contract, Plaintiff has sustained substantial compensable losses for the amounts as a result of the Loss, including but not limited to the replacement cost of the damage to the dwelling, replacement cost of the damaged personal property, temporary repairs, and additional living expenses, plus consequential damages.

29.    Defendant is liable to Plaintiff for her losses.

30.    Defendant's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. *See, e.g., Riad v. Erie Ins. Exchange*, 436 S.W.3d 256, 276 (Tenn. Ct. App. 2013). Specifically, Defendant intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Plaintiff's claim when liability was reasonably clear; (2) refused and failed to conduct a reasonable, prompt, and fair investigation concerning the issues surrounding Plaintiff's claim for insurance proceeds; (3) unjustly refused and/or failed to pay Plaintiff's claim for its own financial preservation with no reasonable or justifiable basis; (4) failed to treat Plaintiff's interests with equal regard to its own; (5) promised prompt action and claim-handling but then failed to provide any payment to compensate Plaintiff for her insured losses; (6) failed and refused to pay Plaintiff's valid claim; (7) unnecessarily delayed payment of Plaintiff's insured losses; (8) misrepresented relevant facts and policy provisions to Plaintiff; (9) failed to acknowledge with reasonable promptness pertinent communications from Plaintiff; (10) failed to adopt and implement reasonable standards for the prompt investigation and settlement of claims; (11) forced Plaintiff to file suit in order to enforce her rights under the Policy; (12) refused to provide Plaintiff with a copy of her insurance policy after a request for same; (13) denied coverage for Plaintiff's claim with no investigation

whatsoever concerning the cause of the Loss; (14) ignored Plaintiff's requests for a re-inspection and that the claim be re-opened; (15) ignored Plaintiff's pleas for help without even providing the courtesy of any response at all; (16) lied to Plaintiff regarding matters pertinent to her claim; and (17) such other facts and circumstances as alleged in this Lawsuit and/or to be shown at trial. Defendant knew, or reasonably should have known, that Plaintiff was justifiably relying on the money and benefits due her under the terms of the Policy. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, Defendant consciously ignored Plaintiff's valid claim and denied Plaintiff's claim and withheld monies and benefits rightfully due Plaintiff. Plaintiff seeks, and is entitled to, punitive damages.

**Count II – Statutory Bad Faith**

31.     The allegations contained in the preceding paragraphs of this Complaint are incorporated by reference as if set forth verbatim herein.

32.     Defendant's refusal and failure to pay the amounts contractually owed to Plaintiff is arbitrary and capricious and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than sixty (60) days have passed since a formal demand has been made on Defendant and full payment has not been made for the Loss as required pursuant to the Policy, for which the twenty-five percent (25%) statutory penalty for bad faith should be invoked.

33.     The bad faith of Defendant is evidenced by the fact that, at all times material hereto, Defendant knew, or reasonably should have known that Plaintiff was justifiably relying on the money and benefits due her under the terms of the Policy and as otherwise promised and represented by Defendant, as well as the actions of Defendant as set forth above and below. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of

7

causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff. Defendant consciously refused to full pay Plaintiff for her insured losses and withheld monies and benefits rightfully due Plaintiff.

34.    Defendant's bad faith is evidenced by all of the facts and allegations set forth above and below in this Complaint, together with the following:

a.    Defendant's intentional failure to fully inform Plaintiff of her rights and obligations under the Policy;

b.    Defendant's intentional failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim when liability was reasonably clear;

c.    Defendant's intentional refusal to pay Plaintiff's claim and to otherwise honor its obligations under the Policy without conducting a reasonable investigation based on all available information;

d.    Defendant's intentional refusal to fully investigate Plaintiff's claim and to obtain all available information before alleging that it had no further obligations to Plaintiff;

e.    Defendant' engaging in acts and practices towards the Plaintiff that amount to acts of baseness, vileness, and/or depravity that are contrary to the good faith duties owed to the Plaintiff;

f.    Defendant's failure to promptly provide Plaintiff with a reasonable and accurate explanation for its refusal to pay her claim;

g.    Defendant's intentional failure to properly adjust Plaintiff's claim and to pay Plaintiff fully for her losses;

h.   Defendant's intentional failure to pay all amounts due and owing to Plaintiff under the Policy with no reasonable or justifiable basis;

i.   Defendant's unjustified refusal to pay Plaintiff's claim for its own financial preservation;

j.   Defendant's wrongful, intentional, and repeated withholding of benefits due Plaintiff pursuant to the terms of the Policy; and

k.   Defendant's engaging in a systematic scheme designed to save money otherwise due and owing to Plaintiff and other similarly situated insureds as a cost-saving mechanism.

35.   In so acting, Defendant intended to and did injure Plaintiff in order to protect its own financial interests, and should be punished via the twenty-five percent (25%) bad faith penalty authorized by statute.

WHEREFORE, as a result of the foregoing, Plaintiff would respectfully request that this Honorable Court award a judgment against Defendant as follows:

A.   For compensatory damages not to exceed $300,000.00;

B.   For punitive damages against Defendant not to exceed $2,000,000.00;

C.   For the twenty-five percent (25%) statutory bad faith penalty;

D.   For all costs incurred by the Plaintiff as a result of this action;

E.   For pre and post-judgment interest; and

F.   For such other further and general relief as this Court deems just and equitable.

### **JURY DEMAND**

Plaintiff demands a jury of her peers.

Respectfully submitted,

GILBERT RUSSELL McWHERTER
SCOTT BOBBITT PLC


J. BRANDON McWHERTER #21600
bmcwherter@gilbertfirm.com
341 Cool Springs Blvd. #230
Franklin, Tennessee 37067
Telephone: (615) 354-1144
Facsimile: (731) 664-1540

CLINTON H. SCOTT #23008
cscott@gilbertfirm.com
101 N. Highland Ave.
Jackson, Tennessee  38301
Telephone: (731) 664-1340
Facsimile: (731) 664-1540

*Attorneys for the Plaintiffs*


## COST BOND

This Firm stands as surety for costs in this matter.